## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed September 24, 1897.

KIRWIN P. PHILLIPS
VS.
HENRY RUHL.

*Beverly W. Mister* for plaintiff.

*Jesse N. Bowen* for defendant.

STOCKBRIDGE, J.—

On the 22nd day of May, 1891, William L. Ashburn, Kirwin P. Phillips and Henry Ruhl, entered into an agreement "to engage in the business of planting oyster shells in the State of Virginia and elsewhere." By the terms of this agreement, it was provided that Phillips and Ruhl were to furnish all the shells required in the business, to pay the expenses and costs in laying out such shells, and that each of them should bear one-third of the expense of a watchman, of taking up oysters from

the beds, and "all legal expenses." Mr. Ashburn was to pay the taxes which might be imposed by the State of Virginia, where it was contemplated that the business would be carried on, and also "to furnish the ground for planting shells, to superintend the laying out of the shells," and to pay his one-third of the expenses above referred to. Each of the three parties to the agreement were to share equally in the profits to be derived from "said business."

On the 13th of March, 1895, for a valuable consideration, Mr. Ashburn transferred all his interest in the agreement thus entered into to Messrs. Phillips and Ruhl.

The business so undertaken proved unprofitable, beyond all possibility of dispute, and on the 31st day of March, 1897, the bill of complaint was filed in this case, praying for an accounting for the proceeds of sales of oysters taken from the bed so planted by the parties hereto, and of the earnings of a schooner called the "Holland Point" and other boats, namely, two skiffs owned by the parties to this suit, and that the property so held jointly might be ordered to be sold, and the proceeds distributed among the parties according to their respective rights, and that an accounting might be had of the amount actually due by the plaintiff, Phillips, to the defendant, Ruhl, arising from their joint dealings in relation to the property.

The first point to be determined is what were the relations of the parties to this suit to one another; were they tenants in common of the property in question, or did the relation of partners exist between them. It is true that the agreement which was signed nowhere uses the word "partnership," and it is further true that the bill of sale of the Schooner Holland Point is not to the parties to this suit as partners, but conveying a one-half interest to each. At the same time it is to be noted that the written agreement nowhere mentions or even suggests that the parties to it were to purchase a vessel of any sort, or that a vessel was in any way essential to or proper for the carrying on of their business, to wit: the planting of oyster shells, and the form of the ownership of the Schooner Holland Point, therefore, in no way determines the relations of the parties.

It is not necessary to constitute a partnership that the term partnership should be used in the agreement; what is necessary is that the mutual undertakings of the parties and their acts should be of such character as to constitute in law the relation of partners.

It is true also that the mere right to share in the profits of a business does not of itself constitute a partnership, though it is a strong indication of such a relation. While the perfect definition of a partnership has probably not yet been formulated, it may, for the purposes of this case, be said to be "a contract of some kind involving mutual consent of the parties, and when such contract is entered into between two or more persons for the purpose of carrying on a trade or business with the right to participate in the profit of such business, then such contract constitutes a partnership, unless there be other fact and circumstances which show that some other relation existed." Such was the definition adopted in the case of Thillman vs. Benton, 82 Md. 73, and it is one which seems entirely applicable to the present case. There was in this case the agreement of the 22nd of May, 1891, which involved the mutual consent of the parties to it, entered into and signed by them for the purpose expressed upon its face of engaging in the business of planting oyster shells, and with the right to the parties signing the agreement to participate in the profits, and there does not appear in all the dealings of the parties from the time when their agreement was entered into down to the time of the bringing of the suit any fact or circumstance to show any different relation, unless it be the purchase and ownership of the schooner "Holland Point." But, as already pointed out, the ownership of this schooner was neither mentioned or provided for in the agreement between the parties, and was not essential or a necessary incident to the carrying out of that agreement, nor is there any proof that she was ever used in or in connection with the shell-planting business. She was purchased after the agreement had been entered into by two only of the three parties to the agreement, and their rights in her were defined in the bill of sale. Capt. Ashburn was still an interested party under the contract, and the ownership of the "Holland Point," therefore, is neither conclusive upon the relations of

the parties to the agreement, or calculated to throw much light upon it. The case, therefore, is in its facts materially different from both the cases of Thillman vs. Benton already referred to, and the case of Waring vs. The National Marine Bank, 74 Md. 279, in each of which cases there were a number of facts tending directly to negative the idea of a partnership. I am constrained therefore to hold that in so far as the business for which the agreement in question was entered into is concerned, the parties to this suit were partners, and being partners, a sale of that partnership business could not be decreed in the present form of this proceeding; nor would the case be different upon the theory that they were tenants in common; because a sale will never be decreed by a Court of Equity unless it clearly appears that there is a property or estate which can form the subject matter of a sale.

Downin vs. Sprecher, 35 Md. 474.

In the present case there is nothing to show that there is or ever was any title whatever of any sort, shape or description in and to the oyster beds which they planted, vested in either of the parties to this cause. The testimony is first, the terms of the agreement by which Capt. Ashburn was to furnish the ground for the planting of the shells, and second, that a large amount of shells were scattered on the bottom in sundry creeks, running into the Rappahannock River; but it nowhere appears by affirmative proof, that Capt. Ashburn ever obtained any lease or license from the State of Virginia for any exclusive occupancy of any of the beds on which the shells were scattered, or that even if it be assumed that he did obtain it, he transferred it to the parties to this suit, if he could legally so transfer it. The agreement that was entered into, nowhere provides for the obtaining by the parties to it of leases or licenses for the planting of oyster beds with exclusive ownership over them, nor could they legally have so obtained them under the Statutes of Virginia. What Capt. Ashburn transferred to the parties to this suit was his interest in that particular agreement, not matters foreign thereto, and no estate or property right is apparent therefor which could form a subject matter of sale under a decree of this Court, and

where such a condition exists no decree for a sale will be entered.

The bill likewise prays for an accounting between the parties and the general rule is that on a bill for an accounting that relief will be granted almost as a matter of course, unless the right of the complainant to it is barred by a lapse of time. But where it manifestly appears from the proof that the party asking the interposition of the Court has no real cause of complaint, and that no good purpose or end can be accomplished by directing an account to be taken, it ought not to be ordered.

McKaig vs. Hebb, 42 Md. 234.

The proof in this case is to the effect that the plaintiff certainly on more than one occasion inspected the books; that access to them or information as to the condition of the accounts were never denied to him; that a statement of the account was furnished when asked for, and that when attention was called by the plaintiff to a certain error in the account furnished, that he was asked to bring the account down to the defendant's office, and that the same would be promptly corrected. As to almost all of the amounts claimed by the defendant to be due him by the plaintiff, they are evidenced by the promissory notes of the plaintiff, and it is difficult, therefore, to discover either real cause of complaint or any good purpose or end to be accomplished by the directing of an account. And if this constituted the sole case, the bill would be at this time dismissed.

There is, however, the schooner "Holland Point," which by the terms of the bill of sale is owned by the parties to this suit, one-half each, which does not seem to come fairly within the terms of the agreement of May 22nd. 1891, already construed to be a partnership agreement, and as before indicated cannot be held to be partnership property, but to belong to the parties to this suit as co-owners. It is in evidence that this schooner has become so worm-eaten that it has been dismantled and abandoned, and it is hard to conceive any object which either party to the suit can hope to obtain by its sale under a decree of the Court of Chancery, since it cannot be expected to produce enough to pay the costs of the suit; nevertheless it is the undoubted right of a co-owner, whether in chattel prop-

erty or an interest in land, by a proceeding in chancery to compel its sale, and the mere fact that the article or interest has not sufficient value to defray the costs of suit, can not destroy this statutory right.

Brendel vs. Klopp, 69 Md. 1.

If insisted upon by the plaintiff therefore a decree will be passed for the sale of the schooner "Holland Point," and the question of the accounting and of the costs of this suit are for the present reserved.