Brown *et al. v.* Long Bell Co. *et al.**

(Division B. Feb. 23, 1925.   Suggestion of Error Overruled April 6,
1925.)

[103 So. 353.   No. 24546.]

1. REMAINDERS. *Merger by life tenant's conveyance to remainder-men.*

   On life tenant's conveyance of land to remaindermen, there was a merger and the whole estate vested in the remaindermen.

2. LIMITATION OF ACTIONS. *Statute of limitation began to run against remaindermen after conveyance from life tenant when youngest . became of age.*

   Where there was a merger by life tenant's conveyance of estate to remaindermen, the statute of limitations as to adverse possession began to run in favor of persons in possession as against each remainderman when he became of age.

3. INFANTS. *Title accepted by law for minor to whom property was conveyed as gift by recorded deed.*

   When property is conveyed to a minor as a gift, and the deed is duly recorded, the law accepts for the minor the title conveyed.

4. DEEDS. *Delivery presumed when deed is put on record.*

   When deed is put on record delivery is presumed.

5. DEEDS. *Evidence held not to overcome presumption that mother's recorded deed to children was delivered.*

   Evidence *held* insufficient to overcome presumption that mother's recorded deed as life tenant to children as remaindermen was delivered.

---

*Headnotes 1.   Estates, 21 C. J., Section 236; 2.   Adverse Possession, 2 C. J., Section 195; Limitation of Actions, 25 Cyc., 3.   Deeds, 18 C. J., Section 119; 4.   Deeds, 18 C. J., Section 497; 5.   Deeds, 18 C. J., Section 548.

(4, 5.)   For authorities discussing the question as to whether delivery of deed to third person or for record by grantor, is a delivery to the grantee, see notes in 54 L. R. A. 865; 9 L. R. A. (N. S.) 224, 38 L. R. A. (N. S.) 944.   8 R. C. L. pp. 1004, 1005; 2 R. C. L. Supp. 704; 4 R. C. L. Supp. 586; 5 R. C. L. Supp. 491.

APPEAL from chancery court of Clarke county.

HON. GEO. C. TANN, Cancellor.

Suit by A. D. Brown and others against the Long Bell Company and others. Decree of dismissal, and complainants appeal. Affirmed.

*Amis & Dunn* and *Graham Perdue,* for appellants.

What was the legal effect of the act of Mrs. Mollie Brown, the life tenant, in signing, acknowledging and recording the deed conveying her life estate to her children. That it was not done for the purpose of conferring any real benefit on her children but for the sole purpose of procuring a decree for the sale of her children's estate in remainder is too plain for argument. She could have sold her life estate at any time without any decree of court. But she wanted to sell her children's interest too, as is shown by the original petition; and this could not be done without a decree of court. Nor could that decree of court be obtained unless her life estate should become merged into the estate in remainder owned by her children.

The uncontradicted proof is that the deed was never delivered to or accepted by the grantees, and that they never knew of its existence or of the record thereof until after the death of the life tenant. In fact, it clearly appears by the record in the cause that five out of the seven grantees named therein were minors at the time, who could not accept the deed even if it had been tendered to them. It seems clear, therefore, that the sole purpose of the life tenant in making and recording the deed was to confer jurisdiction on the court to sell the entire estate in the land, the estate in remainder as well as the life estate.

It seems clear to us that if the court had no jurisdiction of the subject-matter of the suit at the time of filing the original petition, then that the life tenant, one of the parties to the suit, could not by her own act, without the knowledge or consent of the remaindermen, the other

parties to the suit, do anything which would so change the status of the subject-matter as to confer jurisdiction on the court. And the precise question is whether or not under the circumstances, and for the purpose for which it was done, did the fact that the life tenant signed, acknowledged and recorded the deed, without delivery to or acceptance by her children, and without their knowledge or consent, change the actual status of the subject-matter of the suit so as to confer jurisdiction on the court?

No TITLE PASSED FOR WANT OF DELIVERY AND ACCEPTANCE OF DEED. No deed ever operates to pass title, no matter how formally it may be executed, until it is delivered to and accepted by the grantee, or some person for him, authorized to receive and accept it. Code 1892, section 2434, Hemingway's Code, sec. 2267. *Bledsoe* v. *Little*, 4 Howard 13; *Armstrong* v. *Stovall*, 26 Miss. 275; *McGehee* v. *White*, 31 Miss. 41; *Bullitt, Miller & Co.* v. *Taylor*, 34 Miss. 708, 69 Am. Dec. 412; *New Orleans, etc., R. R. Co.* v. *Hemphill*, 35 Miss. 17; *Walker* v. *Pigott*, 1 Miss. Dec. 190.; *Morgan* v. *Hazlehurst Lodge*, 53 Miss. 665; *Hall* v. *Waddell*, 78 Miss. 16; *Ligon* v. *Barton*, 88 Miss. 135; *Wilson* v. *Bridgeforth*, 108 Miss. 199.

True it is that where a donor executes and places of record a deed of gift, the courts will, in the absence of proof to the contrary, presume a delivery and acceptance, where it appears that the gift was made for the sole benefit of the donee. *Wall* v. *Wall*, 30 Miss. 91, 64 Am. Dec. 147; 8 R. C. L. 1009, sec. 69. But this is a mere presumption which may in all cases, be overthrown by testimony. *Metcalfe* v. *Brandon*, 60 Miss. 685. Nor does the presumption ever arise, unless it affirmatively appears that the gift was made in good faith for the sole benefit of the donee. *Life Ins. Co.* v. *Campbell*, 35 Am. Rep. 166; Note 54 L. R. A. 897; *Little* v. *Eaton*, 267 Ill. 623, 108 N. E. 727; *Bartemeir* v. *Ins. Co.*, 130 N. W. 24; *Rittenoster* v. *Brisbane*, 35 Pac. 736.

In the case at bar, no presumption of delivery and acceptance could ever arise from the fact of the execu-

tion and record of the deed; first, because five out of seven of the donees were minors and second because it does not appear that the gift was made in good faith for the sole benefit of the donees, but on the contrary that it was made for the sole purpose of procuring a court decree for the sale of their reversionary interest in the land, and thus to deprive them of all interest therein. Besides even if such a presumption might have arisen, the proof to the contrary overthrows it and establishes the want of delivery or acceptance.

So then, it is clear that the deed was never delivered to or accepted by the grantees therein; that it was not made or recorded in good faith for the purpose of conferring any real benefit on the grantees, but on the contrary for the sole purpose of procuring a court decree for the sale of the entire interest in the land and thereby to deprive the grantees of their estate therein. Such being true no title ever passed from the life tenant to the remaindermen, by reason of the making and recording of the deed, and the actual status of the title to the subject-matter of the suit was not changed thereby, in the least.

THE LIFE TENANT, INCOMPETENT, WITHOUT CONSENT OF REMAINDERMAN, TO MAKE A CONVEYANCE WHICH WOULD AFFECT THE ESTATE IN REMAINDER. A tenant for life is entitled to the possession and use of the property and to the income and profits thereof, until the life estate is ended; but, like a tenant in common, he owes certain duties to his co-owner the remainderman, and is under certain disabilities touching the estate in remainder. For example while he may use the land he may not impair the estate by committing waste in the cutting of timber, *Lorned* v. *Ogden,* 80 Miss. 769; nor can he purchase the land at a tax sale so as to acquire the estate in remainder, *Stewart* v. *Matheny,* 66 Miss. 21; *Jones* v. *Merrill,* 69 Miss. 747; and if he permit the land to become forfeited for taxes, and fails to redeem, the court will, at the instance of the remainderman, appoint a re-

ceiver of the rents for the purpose of redeeming from the tax sale so as to preserve the estate in remainder, *Connon* v. *Barry,* 59 Miss. 289; nor will any adverse possession of the land, however long continued, whether by the life tenant or by any one else, in any way affect the right of the remainderman to enter, on the termination of the life estate, *Gibson* v. *Jayne,* 37 Miss. 164; *Hoskins* v. *Amens,* 78 Miss. 986; *Jordan* v. *Bobbitt,* 91 Miss. 1; *Clarke* v. *Foster,* 110 Miss. 543, nor can he make any conveyance of the land which will cast a cloud on the title of the remainderman, *Hill* v. *Nash,* 73 Miss. 849; nor can he purchase an outstanding title and set it up against the remainderman nor purchase at a foreclosure of a mortgage against the entire estate and acquire a title adverse to the remainderman. 17 R. C. L. 640, sec. 30.

This conclusion, as to the incompetency of the life tenant to execute conveyances which would defeat, impair or in any way affect the remainder, is confirmed by the provisions of section 2444, Code of 1892. This statute has been the law in this state, at least, since the act of June 13, 1822. See Chapter XLII, Hutchison's Code, art. 25, page 609; Code 1857 chapter XXXVI, art. 7, page 307; Code 1871, sec. 2290; Code 1880, section 1199; Code 1892, sec. 2444; Code 1906, sec. 2774, Hemingway's Code, sec. 2278. And the first clause of it has been applied by the court for the protection of the rights of the remaindermen in a number of cases. *Barrier* v. *Young,* 96 Miss. 160; *Dantzler Lumber Co.* v. *State,* 97 Miss. 356; *Anglin* v. *Broadnax,* 97 Miss. 514; *Bank* v. *Cartwright,* 84 So. 136. See also *Cole* v. *Grigsby,* 35 S. W. 689.

It is therefore clear that every remainder depends on some preceding particular estate immediately preceding it in right of enjoyment, and that a remainder in fee is an estate of inheritance. And so understood it seems clear to us that the statute applies to and protects the rights of all sorts of remaindermen, against any action on the part of the life tenant, which would affect the estate in remainder, unless done with the consent of the remainderman. *Hill* v. *Nash,* 73 Miss. 855.

Decrees Void Even if Deed was Operative Because There was no Merger. No Merger Unless so Intended by the Remaindermen. 21 C. J. 1034, par. 234; 10 R. C. L., 666, sec. 27; *Bank* v. *Cartwright,* 84 So. 138; *Dougherty* v. *Jack,* 5 Watts 456, 30 Am. Dec. 335; *McLeery* v. *McLeery,* 65 Maine 172, 20 Am. Rep. 683; *Jameson* v. *Hayward,* 106 Cal. 682, 46 Am. St. Rep. 268; *Wettlaufer* v. *Ames,* 133 Mich. 201, 94 N. W. 950, 103 Am. St. Rep. 449.

In the case at bar none of the remaindermen ever knew of the execution of the deed to them by the life tenant until after her death, and because of that fact there never was, until after this controversy arose, any actual expression by them of an intention as to whether or not a merger should take effect, nor was there any act done by them in reference to the matter from which an intention in that regard might be inferred. And so in view of the principles announced in the foregoing authorities the only way in which the question can now be solved, is to ascertain whether or not under all the facts and circumstances, a merger would be to the interest of the remaindermen.

Complainants not Barred of Their Remedy by Laches or Limitations. Among many other statutes of limitation pleaded by the defendant is section 3122 of the Code of 1906 (Sec. 2486, Hemingway's Code; Sec. 2760, Code 1892). A complete answer to this plea is that the statute in question has no relation to suits for partition as is held in *Martin* v. *Gilleylen,* 70 Miss. 324. Another complete answer to the plea is that the purchaser, J. E. Terrall, was the attorney who represented the petitioners, and was therefore incompetent to purchase at the sale. *Johnson* v. *Outlaw,* 56 Miss. 541; *Sullivan* v. *Walker,* 12 So. 250; *Cameron* v. *Lewis,* 56 Miss. 601.

And since Mr. Terrall, the attorney, was incompetent to purchase, he was not a purchaser in good faith, and neither he nor his vendees can invoke the statute. *Shannon* v. *Summers,* 86 Miss. 619; *Gravel Co.* v. *Archer,* 82

So. 315; *Jonas* v. *Flannikin,* 69 Miss. 577; *Lyebrook* v. *Hall,* 73 Miss. 509.

Another complete answer is that the court had no jurisdiction of the subject-matter of the suit and no authority to order any sale to be made, and the statute does not apply to such sales. *Moores* v. *Fleury,* 87 Miss. 707; *Hoskins* v. *Ames,* 78 Miss. 986; *Clark* v. *Foster,* 110 Miss. 545; *Hoskins* v. *Railroad Co.,* 78 Miss. 786; *Mitchell* v. *Bond,* 84 Miss. 72.

The defendants also plead in bar of complainant's remedy Sec. 3111 of the Code of 1906 (Hem. Code, sec. 2475; Code 1892, sec. 2751). The answer to this plea is that the bill of complaint in the case at bar is not a bill of review, but on the contrary is an original bill to cancel the defendant's claim of title to and for the possession of the land and an accounting for the rents, issues, and profits since the date of the death of the life tenant. And such being the nature and purpose of the bill the statute limiting the time in which bills of review may be filed has no application. *Foster* v. *Canning Co.,* 71 Miss. 624.

Another answer to the plea is that since the court had no jurisdiction of the subject-matter of the suit, then all its decrees were void, *ab initio,* and no appeal or bill of review was necessary to reverse or vacate them. In fact since the court had no jurisdiction to render the decrees it would have had no jurisdiction of a bill of review to annul or vacate them. *Friley* v. *Hendricks,* 27 Miss. 418.

Any statute which required an appeal to be prosecuted or a bill of review to be filed, within a limited time, to have a decree, void for want of jurisdiction, vacated or annulled, under penalty, of giving to such void decree the force and effect of a valid decree, would be violative of the "due process" clause of the constitution. *Donovan* v. *Vicksburg,* 29 Miss. 247; *Griffin* v. *Mixon,* 38 Miss. 424; *Jack* v. *Thompson,* 41 Miss. 49; *Levee Commissioners* v. *Dancy,* 63 Miss. 335; *Pennoyer* v. *Neff,* 95 U. S. 714; *Scott* v. *McNeal,* 154 U. S. 34. The defendants also plead in

bar of complainants' remedy section 646, Code of 1906 (Code 1892, sec. 596).

A complete answer to this plea is that the suit in cause "No. 790, *Ex Parte Mrs. Mollie, Brown, et al.*" was not brought or conducted under the general equity powers and jurisdiction of the court, but under the provisions of the chapter on partition and under the decisions in the case of *Martin* v. *Gilleylen,* 70 Miss. 324; the above-mentioned statute has no application to this case.

Another answer to this plea is that a reading of the cases of *Mayo* v. *Clancy,* 57 Miss. 674; *McLemore* v. *R. R. Co.,* 58 Miss. 514, and *Vaughn* v. *Hudgon,* 59 Miss. 421, demonstrates that the effect of the above statute is merely to defer the finality of decrees for the sale of the real estate of an infant until after the lapse of one year after he reaches twenty-one years of age. The defendants also plead in bar of complainant's remedy section 3090 of the Code of 1906 (Hem. Code, sec. 2554, Code of 1892, sec. 2730).

The complete answer to this plea is, that the deed from Mrs. Mollie Brown to her children, was never delivered to or accepted by her children, nor does any presumption of such delivery or acceptance obtain; that she, as life tenant, was incompetent, without the consent of her children, to execute any deed which would in any way affect their estate in remainder, which consent was never given, nor does any presumption of such consent obtain; and therefore the deed never became operative to vest title to the life estate in the remaindermen.

That even if the deed did become operative to vest title to the life estate in the remaindermen, yet even in that event, there was no merger of the life estate in the remainder; because there was no intention on the part of the remaindermen that it should merge, nor will any presumption of intention to merge, be indulged, in favor of the defendants so as to enable them to deprive the remaindermen of their estate by limitations or adverse possession.

It therefore follows that the life estate continued to exist as a separate estate until the death of the life tenant on December 22, 1918, and that no statute of limitations began to run against the complainants, as remaindermen, until after that time. *Hoskins* v. *Ames,* 78 Miss. 986; *Shannon* v. *Summers,* 86 Miss. 619; *Jordan* v. *Bobbitt,* 91 Miss. 1; *Clark* v. *Foster,* 110 Miss. 543; *Reynolds* v. *Williamson,* 119 Miss. 590; *Belt* v. *Adams,* 86 So. 584.

The defendants also plead in bar of complainants remedy section 3536 of the Code of 1906 (Hem. Code, sec. 2848; Code 1892, sec. 3112). This is not a statute of limitations, in any sense, but is one which undertakes to fix, and define, the force and effect of decrees rendered in partition proceedings. *Brooks* v. *Spann* 63 Miss. 198 and *Adams* v. *Belt,* 100 So. 192, considered and distinguished.

*Bozeman & Cameron, S. H. Terral* and *R. M. Bordeaux,* for appellees.

The precise question is whether the partition proceedings are absolutely void on their face and subject to collateral attack, and not whether the chancery court committed any errors in the partition suit. The chancery court necessarily held, in the partition proceedings, that the deed was effectual.

We do not deem it helpful or necessary to a right decision of this case to go into the rather involved history of the law of merger. Our views are that, at law, a merger usually took place when the two estates met in the same person; but there were numerous instances when this worked injustice. Equity, therefore, to relieve the rigor of this common-law rule, as was her custom, interposed her protection to prevent injustice and adopted the rule that a merger would be prevented, if under the particular facts, it would work a hardship or be inequitable. Section 2444 of the Code of 1892, seems to us to be but declaratory of the equitable rule. However this may be, we do not understand appellants

as contending that section 2444 absolutely prohibits merger. Authorities may differ when merger takes place but they all agree that it can take place. See *Whitaker* v. *Whitaker,* 175 Mo. 1, 74 S. W. 1029. *Martin* v. *Gilleylen,* 70 Miss. 324 and *Gilleylen* v. *Martin,* 73 Miss. 695, seem to be very generally regarded by the bench and bar as the most noteworthy cases on the law of partition in Mississippi, and we are glad to see that opposing counsel so heartily approve of them.

STATUTES OF LIMITATIONS. The unwitting impropriety of the attorney purchasing at the partition sale is the only blemish that we can see in the partition proceedings, and, therefore, the only thing as to which a plea of a statute of limitations would be necessary. If an attorney should be regarded as ineligible to buy, his buying, though, as we understand it, would not vitiate the sale but would only give to persons as to whom he sustains a fiduciary relation the right to hold him as trustee. Counsel for appellants frankly concede that they are now barred of availing themselves of this equity and this matter is, therefore, eliminated from the case.

Our contention is that (barring the above-mentioned defect) the decree in partition would not be disturbed in a direct proceeding. Our contention further is that the statute of limitations should be applied to the appellants as if they were absolutely owners and not mere remaindermen; that the execution of the deed by the life tenant and the affirmative action of the appellants in seeking in the partition suit relief that was predicated on the fact that there had been a merger gives these appellants the character of absolute owners and not mere remaindermen.

But even if we are mistaken about this and even if the statutes should be applied to them as mere remaindermen, they are still barred from assailing the decree in the partition suit. *Jordan* v. *Bobbitt,* 91 Miss. 1; *Adams* v. *Belt,* 100 So. 191; *Martin* v. *Gilleylen,* 70 Miss. 324. Independently of the partition proceedings, the facts of this case would warrant the chancellor in hold-

ing that the appellants were barred by the ten-year statute of limitations and that the appellees had acquired title by adverse possession.

Appellants have come into their estate under the chaperonage and protection of mother, father and chancellor. They have had their day in court. The deed from the life tenant has been on record for twenty-three years. The decree in partition was rendered twenty-three years before this suit was filed. The partition proceedings are at least presumably valid. The possession has been open, continuous and adverse. The appellees have in absolute good faith and in reliance upon the face of the record and the law bought these lands and made valuable improvements thereon, and we earnestly submit that it would now be shockingly inequitable to take these lands away from appellees.

Argued orally by *R. M. Bordeaux,* for appellees.

Holden, P. J., delivered the opinion of the court.

The suit was filed in equity by the appellants to cancel the claim of title of the Long Bell Company, appellees, to certain lands named in the bill, to-wit, twenty-six acres off the east side of northwest quarter of southwest quarter, and twelve acres in west side of northeast quarter of southwest quarter, section 1, Township 2, Range 15, situated in Clarke county, state of Mississippi.

The appellants claim title as devisees in remainder under the will of J. H. Johnson, deceased, while the appellees essert title through purchase at a partition sale decreed in April, 1898, and by adverse possession; the purchaser at the sale having conveyed to successors in title, who conveyed to the appellees Long Bell Company, who have possessed and claimed adversely for twenty-two years before the filing of this suit. Upon a final hearing on the merits the court denied the relief sought by complainants, and dismissed the bill from which decree this appeal is taken.

The facts, briefly stated, necessary to an understanding of the decision, are as follows: In October, 1885, J. H. Johnson, the owner of the lands in controversy, died, and left a will which was duly probated. By his will he devised the land to his daughter, Mrs. Molly Brown, "until her death and at her death to go to her children." The land in controversy was a part of his place of residence, and the complainants herein are the children of Mrs. Molly Brown, and the heirs of such other children as are dead.

Mrs. Molly Brown was the daughter of J. H. Johnson, deceased, and the wife of A. D. Brown. In 1898, Mr. and Mrs. Brown were the parents of the seven children, appellants herein, and the youngest one at that time was eight years of age. On April 11, 1898, Mrs. Molly Brown deeded her life estate in the land to her children, the appellants, which deed was duly recorded on April 16, 1898.

The minutes of the chancery court of Clarke county, Miss., dated April 18, 1898, shows a decree, No. 790, *Ex parte Annie Laurie Brown et al.* (the minors therein suing by their next friend and father, A. D. Brown), as petitioners in the partition of the land in question, and ordering a sale thereof, and the distribution of the proceeds according to the respective interests of the petitioners therein, who are the appellants in the case before us.

The minutes of the court further show that the partition decree of sale was carried out after due notice, and that Mr. G. L. Donald, who had been appointed a commissioner in the decree to sell the lands, sold them to one Mr. Terrell for the sum of three hundred and twenty-nine dollars and fifty-one cents, which amount was paid by the purchaser to Commissioner Donald, who in turn distributed forty-two dollars each to the adult children, and paid the balance of two hundred ten dollars and ten cents to Alfred D. Brown, father of the minors, appellants, as the distributive shares of Fanny, Jack, Alfred, Octavia, and Joe Brown of the money re-

ceived for the lands partited and sold by the commissioner.

The then two adult children, appellants herein, Annie Laurie Brown and Molly J. Brown, received their respective shares of forty-two dollars each, from the commissioner, and their receipts are shown in this record as well as the receipt of the father, Alfred D. Brown, who received the two hundred ten dollars and ten cents, to be distributed to his then five minor children as their share in the proceeds of the sale of the land.

It appears that at the trial hereof an old jacket or an old folder numbered 790, and styled *"Ex parte Molly Brown et al.,"* had been found amongst the scattered court papers, and this jacket contained a petition styled *Ex parte Mrs. Molly Brown, Annie Laurie Brown, Molly Brown, Fanny Brown, adults, and Jack, Alfred, Octavia and Joe Brown, minors,* who sue by their next friend and mother, Mrs. Molly Brown, for a partition of the lands here involved and asking that they be sold in the interest of the petitioners. This petition sets up the will of J. H. Johnson, deceased, and states that under the terms of the will "the petitioner Mrs. Molly Brown inherited a life estate in said land with remainder to your petitioners, Annie Laurie Brown, Molly Brown, Fanny Brown, adults, and Jack, Alfred, Octavia and Joe Brown, minors, in fee." It also appears that the general docket at one place showed a proceeding styled *Ex parte Molly Brown et al.,* No. 790.

However, the record discloses that while the chancery docket, in 1897, showed a petition styled *Ex parte Mrs. Molly Brown et al.* and numbered 790, the issue docket for that court showed that the case which was set down for hearing was styled *"Ex parte Annie Laurie Brown et al.,"* and that the cause was set down for hearing at the April term, 1898, and also was thus set down on the report of the commissioner at the April term, 1899.

The Annie Laurie Brown petition mentioned in the decree, which may have been an amended petition filed to take the place of the Mrs. Molly Brown petition, was

not in evidence at the trial, and there is no proof to show its existence unless it be presumed that the Annie Laurie Brown decree partiting the land followed a petition for that purpose filed some time prior to the granting of the only decree which appears to have been granted in the case.

Alfred D. Brown, the husband of Mrs. Molly Brown, and the father of the children, appellants herein, died in 1914, and his wife, Mrs. Molly Brown, the mother of the appellants, died in 1918. The original bill in this cause was filed by the appellants on August 29, 1921. At the time of the filing of the bill herein, the youngest of the Brown children, appellants, was more than thirty-one years of age, and more than twenty-two years had elapsed since the partition suit and the recording of the deed from Mrs. Molly Brown to appellants, her children.

It was also conclusively established in the lower court that the appellees, Long Bell Company, and their predecessors in title had been in the open, actual, hostile, continuous, and adverse possession of the land for more than twenty-two years under the claim of absolute ownership.

It is also shown that the proceeds from the partition sale of the land were distributed to the appellants, that is, paid to the adults directly, and to the minors through their father, guardian, and next friend. Receipts for the respective payments were executed to the commissioner, Mr. Donald, at the time the proceeds were paid over. There was no offer by the bill or in court to return the money thus paid to the appellants; they in fact denied having received the money until the receipts were produced at the trial.

The suit is an attack on the title of appellees, and the main contentions of the appellants are, first, the partition decree is void on its face for want of jurisdiction, in that the ''Molly Brown petition'' shows an attempt to partite land in which some of the petitioners owned a remainder interest and the other, the mother, Mrs. Brown, owned a life estate, and that partition would not

138 Miss.—36.

lie under this state of facts, and that the court was without authority because of statutory provisions contrary to partiting lands with these diverse titles in the petitioners. Second, that the deed from the mother, Mrs. Brown, to her children, conveying her life estate to them, was not a merger of the two estates, but was a void conveyance, because the deed was never accepted by the children, and that the deed was made for the fraudulent purpose of merging the estate so that partition would lie; and that the appellants did not receive any of the proceeds from the partition sale, and none was invested for their benefit.

And it is true the record shows that the appellants testified they knew nothing of the will of Mr. Johnson, nor of the partition sale or the deed from their mother to them, and that they did not accept the deed, nor receive any of the benefits from the partition sale.

The appellees defend their title to the land upon several grounds, which we shall here enumerate as follows: First, the partition suit was regular and valid; second, that even if irregular it was not subject to collateral attack; third, that the receipt of the purchase money conclusively estops appellant; fourth, that all are barred by the two-year statute of limitation with respect to bills of review; fifth, that they are all barred by the ten-year statute of limitation; sixth, that appellees have acquired title by adverse possession.

We find it unnecessary to decide some of the points presented by the appellees, although we may say in passing that several of them may be pregnant with merit.

We think the decree of the lower court in denying the relief sought by appellants was correct, upon the ground that the appellees acquired title to the land by adverse possession for more than ten years after the youngest appellant became of age.

The reasoning which directs us to this conclusion is that when the mother, Mrs. Brown, conveyed to her children, appellants, her life estate in the land, there was a merger, and the whole estate vested in the remainder-

men against whom the statute of limitation as to ad-
verse possession began to run at the time the appellees
and their predecessors in title took possession, and com-
menced to claim and occupy the land; and each of the
appellants lost title by ten years' adverse possession aft-
er reaching the age of twenty-one years.

The youngest one of the appellants herein was more
than thirty-one years of age before the instant suit was
filed, and the appellees herein had held the land ad-
versely and continuously for more than twenty years be-
fore this suit was brought. Therefore the rights of the
appellants are barred.

But counsel for the appellants contend the deed from
Mrs. Molly Brown to the children was not a valid con-
veyance, because it was not accepted by the grantees, nor
was it intended by the parties to be a merger of the two
estates, and that, finally, the deed was fraudulent in that
it was given for the purpose of permitting the land to
the partited under the law so the proceeds might be used
for other objects than that of benefiting the children.

But we disagree with the position of counsel in this
regard. The deed by the mother to her children was
not an unnatural or unusual thing to do under the cir-
cumstances in this case. And this is true, even though
the deed was made by her so that the land might be
partited, and the proceeds received and used for the
benefit of the family, who were harmonious and devoted
to each other until the death of the mother in 1918. We
see no wrong in the transaction. At that time the price
received for the land was fair and reasonable, and it
appears from the record that the property was deteri-
orating in value, and that a sale would be for the best
interest of the owners. There was no fraud perpetrated
upon the children by the parents.

The fact that the appellants testified they did not ac-
cept the deed and knew nothing about the transaction un-
til after the death of their mother did not conclusively in-
validate the deed, because when property is conveyed
to a minor, as a gift, as here, and the deed is duly re-

corded, the law accepts for the minor the title conveyed, and delivery may be presumed under the circumstances of the case before us. The conduct of the parties, in dealing with the land and accepting the proceeds of the sale, inferentially tends to show that they accepted the deed from the mother. The minor often is too young to speak or act. So it is not necessary in every case that the grantees actually receive the deed.

When a deed is put upon record delivery is presumed. *Neblett* v. *Neblett*, 70 Miss. 572, 12 So. 598; 8 R. C. L., p. 1004. Therefore, when the title went out of the life tenant into the remaindermen, the latter were the complete owners, and the right of the remaindermen to sell or partition the land became absolute, as they became the fee-simple owners, and being the complete owners the statute of limitation, as to ˙adverse possession, began, to run against them, and they were barred when they permitted the statute to run for ten years after they became of age.

Counsel for appellants, to put it in another way, contend the legal presumption that the appellants accepted the deed from their mother ˙is overcome by the testimony of appellants that they did not accept it.

We think that notwithstanding the appellants testified that they did not accept the deed, yet the chancellor, as the trier of fact, may not have believed them. Their conduct with reference to the property as shown by this record, and the circumstances and the reasonable inferences to be drawn therefrom, together with the presumption that the deed was accepted at the time it was recorded, were sufficient proof to sustain the finding of the chancellor on the facts as˙ to whether the deed was accepted by appellants; and we assume, as this appellate court should, that the lower court passed upon the question of the acceptance and validity of the deed, and decided the case upon the theory that the deed from Mrs. Brown to her children, ˙appellants, was valid and vested the fee-simple estate in appellants in April, 1898, and that appellants,˙except for the partition sale, have

been complete owners of the land since that time. This being true, it follows that the chancellor was right in holding the appellants were barred by ten years' adverse possession by appellees after all appellants had reached the age of twenty-one years. *Metcalfe* v. *Brandon*, 60 Miss. 685; *Harkreader* v. *Clayton*, 56 Miss. 383, 31 Am. Rep. 369; *Cocks* v. *Simmons*, 57 Miss. 183; 18 C. J. 206, par. 107; 18 C. J. 213, par. 119.

A decision of the case upon the ground of adverse possession makes it unnecessary to discuss any other question presented on the appeal, and we shall not, except to say that the "Annie Laurie Brown decree," which partites the land by sale and distribution of the proceeds, is presumed, as a general rule, to have followed a petition for that purpose; but regardless of whether the "Molly Brown petition" was the only petition filed in the partition proceedings, we think that without any partition decree whatever in this case, the deed from the mother, Mrs. Brown, to her children vested the complete ownership in the children, the appellants, and when they permitted it to be held adversely for more than ten years after the youngest child became twenty-one years of age they lost all claim of title to the land.

We have not overlooked the authorities cited in the briefs of counsel on either side, especially *Martin* v. *Gilleylen*, 70 Miss. 324, 12 So. 254; *Gilleylen* v. *Martin*, 73 Miss. 695, 19 So. 482; and *Adams* v. *Belt* (Miss.), 100 So. 191.

The decree of the lower court is affirmed.

*Affirmed.*